RECEIPT # 58279
AMOUNT $ 150
SUMMONS ISSUED Y-3
LOCAL RULE 4.1
WAIVER FORM
MCF ISSUED
BY DPTY. CLK.
DATE 9-23-04

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

FILED
IN CLERKS OFFICE
2004 SEP 23 P 1:48
U.S. DISTRICT COURT
DISTRICT OF MASS.

DOGWATCH, INC., a Massachusetts corporation,

Plaintiff,

v.

RUSTY BROUSSARD; JULIE BROUSSARD; and PETSTOP OF LOUISIANA, a Louisiana business entity,

Defendants.

CIVIL ACTION NO. ________

04cv12048MLW

**COMPLAINT**

**Introduction**



In this action for declaratory judgment and damages, DogWatch, Inc. ("DogWatch"), a manufacturer of animal restraint systems, seeks relief in connection with a former dealer's breach of its Dealership Agreement; attempts to impede DogWatch from contacting DogWatch customers; and improper efforts to induce other DogWatch dealers to breach their contracts with DogWatch.

**The Parties**

1. Plaintiff DogWatch, Inc. (hereinafter "DogWatch") is a Massachusetts corporation, with its principal place of business at Ten Michigan Drive, Natick, Massachusetts. DogWatch is in

the business of, among other things, marketing, distributing, and selling electronic animal restraint systems.

2. Defendant PetStop of Louisiana ("Dealer") is a Louisiana business entity with its principal place of business at 219 East LeBlanc, Maurice, Louisiana 70775. For some years, Dealer was an authorized dealer in DogWatch electronic animal restraint systems, and did business under the name, "DogWatch of Louisiana."

3. Defendants Rusty Broussard and Julie Broussard (the "Broussards") are individuals who reside in Maurice, Louisiana. On information and belief, the Broussards, from at least 1997 to the present, have been Dealer's owners, officers and directors, and the conscious, active, and dominant force behind Dealer's unlawful acts in this judicial district.

4. For purposes of this Complaint, PetStop of Louisiana and Defendants Rusty and Julie Broussard, will be referred to, collectively, as "Defendants."

**Jurisdiction and Venue**

5. This Court has subject matter jurisdiction in this matter pursuant to 28 U.S.C. § 1332(a) because there is complete diversity of citizenship between the parties, and the amount in controversy in this action exceeds $75,000, exclusive of interest and costs.

6. Venue is proper in this judicial district under 28 U.S.C. § 1391(b)(2), because a substantial portion of the events or omissions giving rise to Plaintiff's claims occurred in this judicial district, and a substantial part of the property at issue is situated here.

7. As set forth below, an actual controversy exists for purposes of 28 U.S.C. § 2201 with respect to the parties' respective rights and obligations under a Dealer Agreement and related documentation between DogWatch and Defendants, and under applicable state law.

**Background**

8. For a number of years, DogWatch has been in the business of marketing, distributing and selling electronic animal restraint systems, including "hidden fence," electronic training and other animal containment products. The DogWatch animal restraint system has been promoted widely by DogWatch, and has received extensive publicity. In April 1998, the DogWatch animal restraint system was featured in Consumer Digest, and was awarded Consumer Digest's coveted "Best Buy" award.

9. DogWatch animal restraint products are marketed through a nationwide network of authorized dealers. Applications for DogWatch dealerships are received, processed

and screened by DogWatch at its corporate headquarters in Natick, Massachusetts.

10. As a condition of acceptance as a DogWatch dealer, the dealer executes a Dealer Agreement, under Massachusetts law, which binds the dealer to "use . . . best efforts to create, increase, and satisfy a demand for [DogWatch] products," using a Customer Order Form provided by DogWatch.

11. The DogWatch Customer Order Form, which is used by dealers to obtain orders under the Dealer Agreement, includes a free lifetime-warranty option, under which "any transmitter installed by an authorized dealer, equipped with a DogWatch Lightning Surge Protector, and grounded to DogWatch Inc. specifications, will be warranted for as long as the original owner owns the system."

12. To obtain the benefits of this free warranty, customers and dealers must sign the Customer Order Form and submit it to DogWatch's home office in Massachusetts. The information contained on the form, submitted to Dogwatch, thereafter becomes property of DogWatch. It may be used by DogWatch in contacting customers, servicing equipment, fulfilling the company's warranty obligations, or for any other lawful purpose.

**Defendants' Agreement With DogWatch**

13. In 1997, DogWatch signed a dealer agreement (the "Dealer Agreement") with Defendants. The Dealer Agreement permitted Defendants to serve as an exclusive dealer of DogWatch products in the Lafayette, Louisiana area.

14. As part of their agreement to become dealers, agents and licensees of DogWatch, Defendants committed to "use . . . best efforts to create, increase, and satisfy a demand for [DogWatch] products," using the Customer Order Form provided by DogWatch.

15. The Dealer Agreement between Defendants and DogWatch was terminable by either party, on thirty days' written notice.

**COUNT I**
**(For Breach of Contract)**

16. DogWatch incorporates by reference the allegations of paragraphs 1 through 15 as if set forth in full herein.

17. On May 12, 2004, DogWatch acquired evidence that Defendants, in breach of the DogWatch Dealer Agreement, were advertising themselves as dealers for PetStop, a competing manufacturer of animal restraint systems; and were marketing and promoting the competing products made and distributed by PetSTop.

18. DogWatch immediately contacted Defendants to confront them with this evidence. Defendants, after being confronted,

verified that they had in fact signed a dealer agreement with PetStop, and were selling PetStop products.

19. Defendants' activities, in entering into a dealer relationship with PetStop, and in marketing and distributing PetStop systems prior to May 12, 2004, constituted a breach of the DogWatch Dealer Agreement. Defendants took no steps to terminate their DogWatch Dealer Agreement prior to May 12, 2004, when DogWatch confronted Defendants with the evidence of Defendants' breach.

20. In terminating their relationship with DogWatch, and entering into a relationship with PetStop, Defendants did not comply with the provisions of the Dealer Agreement. Among other things, and without limitation, Defendants did not provide DogWatch with thirty days' notice of termination, required by the Dealer Agreement.

21. Defendants' failure to comply with the thirty-day provision of the Dealer Agreement was knowing and intentional, and was intended by Defendants to inflict commercial harm on DogWatch, by, among other things, denying DogWatch an opportunity to transfer Defendants' DogWatch dealership to others, and to set into place mechanisms for the servicing and upgrading of DogWatch equipment.

22. On information and belief, since leaving DogWatch, Defendants have attempted to persuade other DogWatch dealers to

walk away from their dealer agreements, *en masse*, without honoring the thirty-day transition provision, in a manner calculated to inflict maximum commercial harm on DogWatch, its sales network, and its product lines.

23. As a direct and proximate result of Defendants' wrongful conduct, described above, DogWatch has suffered and will continue to suffer lost sales and other substantial injury and damage to its business, including injury and damages to DogWatch's goodwill, and to its general reputation, and to its reputation in the trade, the amount of this damage exceeding $75,000.

**COUNT II**
**(For Declaratory Judgment)**

24. DogWatch incorporates by reference the allegations of paragraphs 1 through 23 as if set forth in full herein.

25. Following the termination of Defendants' Dealer Agreement, DogWatch attempted to mitigate the damages caused by Defendants' actions, by contacting those customers who had submitted warranty information to DogWatch.

26. In this communication, among other things, DogWatch advised customers that they could contact DogWatch's customer service department, in Massachusetts, if they had questions or problems with their warranted DogWatch equipment, or if they needed additional equipment. DogWatch also advised customers

that it was seeking a qualified individual to represent the DogWatch product line, and invited customers to contact DogWatch if they were interested in this opportunity.

27. DogWatch's communications with these DogWatch customers were valid, legitimate, authorized, and within DogWatch's legal rights.

28. On September 21, 2004, Defendants, through counsel, sent a letter to DogWatch in Massachusetts. The letter demanded that DogWatch cease and desist all contacts with DogWatch customers, in Defendants' former dealership region, whose equipment had been warranted by DogWatch.

29. In their September 21, 2004 letter, Defendants took the position that the warranty information submitted to DogWatch - in connection with warranties extended by DogWatch, on DogWatch equipment - constituted "confidential and propriety information," owned by *Defendants*, and that DogWatch could not use that information, without Defendants' permission, even to support the DogWatch warranties for which the information originally was submitted.

30. Defendants further advised DogWatch that if DogWatch did not immediately cease and desist further use of the warranty information, Defendants would file suit against DogWatch for unfair business practices. The amount in controversy in such a

proceeding would exceed $75,000, exclusive of interest and costs.

31. Pursuant to 28 U.S.C. § 2201, *et seq.*, DogWatch is entitled to a judicial declaration that it is the owner of the customer warranty information that was submitted by Defendants on its behalf, and that it may use the information for any lawful purpose, including, *inter alia*, the fulfilment of warranty obligations on DogWatch equipment.

32. Declaratory relief is appropriate because an actual controversy exists between the parties with respect to the issues presented.

**COUNT III**
**(Misappropriation of Proprietary Information)**

33. DogWatch incorporates by reference the allegations of paragraphs 1 through 32 as if set forth in full herein.

34. Pursuant to the DogWatch Dealer Agreement, and in their capacity as a dealer, agent and licensee of DogWatch, Defendants were provided with various confidential and proprietary information for use in marketing DogWatch products. This information included, without limitation, access to DogWatch's proprietary e-mail distribution list, which, in turn, permitted Defendants to obtain access to, and communicate with, the entire DogWatch dealership network.

35. The trade secret information with which Defendants were provided was not within the general knowledge of the public or the trade, and was the subject of reasonable efforts by DogWatch to protect its secrecy and use.

36. The Dealer Agreement signed by Defendants included an implied covenant that Defendants would not use or disclose this DogWatch proprietary information to persons not authorized by DogWatch, or in connection with the solicitation of competing animal restraint products and services.

37. Since leaving the DogWatch dealer relationship, on information and belief, Defendants illegally have made use of the proprietary DogWatch e-mail network, and other trade secret information obtained in the course of the DogWatch dealer relationship, to promote PetStop products, to defame DogWatch and its products, to solicit DogWatch dealers, and to persuade those dealers to abandon DogWatch and to join Defendants as dealers in PetStop equipment.

38. In these communications with DogWatch dealers, Defendants, among other things, have encouraged DogWatch dealers to submit "bogus information" to DogWatch, on warranty cards, in order to frustrate the fulfilment of DogWatch's warranty obligations. Defendants' messages, to active DogWatch dealers, on the DogWatch dealer network, have been sent with the subject line, "DOGWATCH DEALER ALERT," in an apparent effort to "pass

off" these messages as official DogWatch communications, and to raise concern and alarm among active dealers.

39. As a direct and proximate result of Defendants' wrongful conduct, described above, DogWatch has suffered and will continue to suffer lost sales and other substantial injury and damage to its business, including injury and damages to DogWatch's goodwill, and to its general reputation, and to its reputation in the trade, the amount of this damage exceeding $75,000.

**COUNT IV**
**(Interference with Prospective Business Advantage and/or Relations)**

40. DogWatch incorporates by reference the allegations of paragraphs 1 through 39 as if set forth in full herein.

41. During the time period relevant to this Complaint, Defendants were aware of existing and prospective business relations between DogWatch, in Massachusetts, and its nationwide dealer network, with respect to the provision of DogWatch products and services.

42. Defendants have tortiously, maliciously and intentionally interfered with such relationships, with improper motive, and through improper means, as alleged above.

43. As a direct and proximate result of Defendants' wrongful conduct, described above, DogWatch has suffered and will continue to suffer lost sales and other substantial injury

and damage to its business, including injury and damages to DogWatch's goodwill, and to its general reputation, and to its reputation in the trade, the amount of this damage exceeding $75,000.

**COUNT V**
**(Unfair Competition)**

44. DogWatch incorporates by reference the allegations of paragraphs 1 through 43 as if set forth in full herein.

45. Through their conduct, as described above, Defendants have placed themselves in competition with DogWatch, in the business of distributing and selling electronic animal restraint systems.

46. Defendants' conduct, as described above, constitutes improper, wrongful and unfair methods of competition under common law.

47. As a direct and proximate result of Defendants' wrongful conduct, described above, DogWatch has suffered and will continue to suffer lost sales and other substantial injury and damage to its business, including injury and damages to DogWatch's goodwill, and to its general reputation, and to its reputation in the trade, the amount of this damage exceeding $75,000.

**REQUEST FOR RELIEF**

W [illegible] DogWatch requests that this Court:

[illegible] DogWatch, and against

Defen[illegible] laint;

[illegible] n enjoining Defendants,

thei[illegible] nd employees, and all others

sub[illegible] ier utilizing DogWatch

prc[illegible] the DogWatch dealer

di[illegible] with the marketing, sale,

ir[illegible] ny competing product,

i[illegible] PetStop system;

[illegible] the Complaint, that DogWatch

[illegible] ity information submitted to it,

[illegible] ho have submitted warranty

[illegible] them of warranty, product, and

D. [illegible] of the damages that have been incurred by DogWatch due to Defendants' wrongful acts, as alleged above, and enter a judgment against Defendants in the amount of such damages, plus multiple and punitive damages as appropriate;

E. determine the amount of the profits that have been obtained by Defendants as a consequence of its wrongful acts, as alleged above, and order disgorgement damages, by Defendants, in the amount of such profits;

F. award punitive and exemplary damages against Defendants, and in favor of DogWatch, as set forth above, to the extent authorized by law;

G. award DogWatch the costs, including reasonable attorneys' fees, that it has incurred in bringing and maintaining this action; and

H. award such other and additional relief as the Court deems just and proper.

**JURY DEMAND**

Plaintiff requests jury trial on all issues so triable.

Respectfully submitted,

DOGWATCH, INC.,

By counsel,

Eric Hermanson, Esq.
(BBO #560256)
CHOATE, HALL & STEWART
Exchange Place, 53 State Street
Boston, MA 02109
(617) 248-5000

Dated:
September 23, 2004